Filed 1/24/25  P. v. Cato CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RODDY NEIL CATO,<br><br>    Defendant and Appellant. | H051711<br>(Santa Clara County<br> Super. Ct. No. C2210497) |

## I.    INTRODUCTION

After the trial court denied defendant Roddy Neil Cato's application for mental health diversion, defendant pleaded no contest pursuant to a plea agreement to assault with a deadly weapon, a knife (Pen. Code, § 245, subd. (a)(1); count 2),[1] misdemeanor threats to commit a crime resulting in great bodily injury (§ 422, subd. (a); count 3), inflicting corporal injury on a former cohabitant (§ 273.5, subd. (a); count 4), and misdemeanor contempt of court for violating a protective order (§ 166, subd. (c)(1); count 7).  The trial court placed defendant on probation for three years.

Defendant contends that the trial court erred in denying his mental health diversion application because substantial evidence does not support the trial court's finding that he posed an unreasonable risk of danger to public safety.  For reasons outlined below, we will affirm the judgment.

---

[1] All further statutory references are to the Penal Code.

## II. BACKGROUND

Defendant was formerly engaged to R.P.,[2] and the two had lived together for a period until defendant moved out before the charged offenses. After defendant had moved out, according to R.P., he entered R.P.'s residence on August 15, 2022 and confronted her and a male friend who was at the residence. According to R.P., defendant then became angry and "smashed" her cell phone and "proceeded to punch" her television, rendering both devices inoperable. Later that day, R.P. was in a park walking her dog when defendant approached her with a knife yelling, " 'Do you want to be with me or not?' " After R.P. agreed to speak with defendant, defendant told R.P. at least twice while holding the knife, " 'I want to kill you.' " Defendant then put the knife to R.P.'s neck. R.P. testified at the preliminary hearing that the following then occurred: "And then he moved [the knife] from my neck, but it was still in his right hand, and he grabbed my head with both his hands and was screaming, ' I just want to kill you.' And my right ear was slit open and blood started to pour down my chest." Defendant fled when he saw R.P. bleeding. R.P. testified at the preliminary hearing that she suffered "a laceration from the middle of [her] ear all the way down to the bottom of [her] ear lobe," and that she received stitches. Later, defendant repeatedly violated a protective order R.P. obtained by calling R.P from jail after he was arrested.

Defendant was charged by information with seven counts: mayhem (§ 203; count 1); assault with a deadly weapon, a knife (§ 245, subd. (a)(1); count 2); felony threats to commit a crime resulting in great bodily injury (§ 422, subd. (a); count 3); inflicting corporal injury on a former cohabitant (§ 273.5, subd. (a); count 4); vandalism causing damage of $400 or more (§ 594, subd. (a); count 5); misdemeanor vandalism causing damage of less than $400 (*ibid.*; count 6); and misdemeanor contempt of court for violating a protective order (§ 166, subd. (c)(1); count 7). Regarding counts 2, 3, and

---

[2] We refer to the victim by her initials to protect her privacy interests. (See Cal. Rules of Court, rule 8.90(b)(4).)

4, the information alleged that defendant personally used a deadly and dangerous weapon, a knife (§§ 667, 1192.7, subd. (c)(23), 12022, subd. (b)(1)) and that probation should not be granted (§ 1203, subd. (e)(2)).

The trial court declined to set bail. Defendant then moved for an order to set bail or to grant him supervised release. The trial court denied the motion, finding "by clear and convincing evidence that no condition or combination of conditions will reasonably assure the protection of the public or safety of the victim" and that "defendant's risk to the public and victim outweigh" his eligibility for bail and that therefore no bail should be set.

Defendant then applied to the trial court for mental health diversion. Defendant's application asserted that he was eligible for diversion under section 1001.36, subdivision (b) because he was diagnosed with "Adjustment Disorder with Depressed Mood, Amphetamine-type use Disorder severe, and Cannabis Use disorder severe," and because these diagnoses created a rebuttable presumption that his mental health disorders were a significant factor in the commission of the charged offenses. Defendant's application further asserted that he met the criteria for suitability for mental health diversion under section 1001.36, subdivision (c), including that he did not pose an unreasonable risk of danger to public safety. Defendant's application asserted: "Mr. Cato has no violent criminal convictions and no felony convictions. This lack of criminal history, coupled with the insight gained through rehabilitative efforts, indicate that Mr. Cato will be a productive and law-abiding adult in and out of the Mental Health Diversion program. Given the lack of violent or significant criminal history and the high standard for this suitability prong, Mr. Cato must be found suitable for Mental Health Diversion." Defendant's application attached a statement from a social worker outlining his mental health issues along with documentation demonstrating his completion of or progress in several rehabilitative programs in jail. The prosecution opposed defendant's application.

3

After additional briefing concerning this matter, the trial court found that defendant was eligible for mental health diversion under section 1001.36, subdivision (b), and that the first three suitability criteria under section 1001.36, subdivision (c) were satisfied. However, the trial court found that defendant was not suitable for mental health diversion because he posed an unreasonable risk of danger to public safety. After recounting the factual basis for the charged offenses, the trial court stated that by "reacting this horribly, even if it's the result of a mental health condition," defendant "poses partners . . . at risk of being killed or a member of the public at risk of being killed." Therefore, the trial court denied the mental health diversion application on August 15, 2023.

Pursuant to a plea agreement, defendant then pleaded no contest on October 30, 2023 to assault with a deadly weapon, a knife (count 2), threats to commit a crime resulting in great bodily injury reduced to a misdemeanor (count 3), inflicting corporal injury on a former cohabitant (count 4), and misdemeanor contempt of court for violating a protective order (count 7). The remaining charges and allegations were dismissed at sentencing. The probation officer's presentence report stated: "In reviewing Judicial Council Rule 4.414, favorable factors outweigh the unfavorable factors in that the defendant has the ability to comply with the terms of Probation, he conveyed having family support to assist with his children, he has the ability to obtain and keep employment, and this is the defendant's first Felony conviction. Additionally, one cannot overlook the defendant's efforts to learn tools and trades to help improve not only his life, but the skill set to successfully integrate himself back into the community. He has continued to work at maintaining his sobriety and becoming a better father to his children. Given the defendant's limitation is due to the nature of the crime, he appears to be amenable to Probation."

On December 1, 2023, a different trial judge than the judge who denied the mental health diversion application placed defendant on probation for three years. In placing

4

defendant on probation, the trial court stated that it "cannot ignore the fact that Mr. Cato has made a lot of effort in learning the tools to improve himself." The trial court stated: "It is not often that I get briefing with so many certificates and programming. Mr. Cato, I wish every defendant that was before me use[d] their time in the County Jail as wisely as you have done in this case." The trial court stated: "I do agree with the Prosecution that the fact that Mr. Cato wants to do probation, despite having close to two years['] worth of credits, is also an indication to the Court that he's willing to do the hard work because I do actually think a probation sentence in this case is harder than if I were to sentence you to a State Prison term where you would essentially credit out in two weeks, in less than two weeks on the case. Probation will be able to supervise you more, will be able to give you the tools to continue to be successful." Defendant brought this appeal after obtaining a certificate of probable cause from the trial court.

## III.    DISCUSSION

"In 2018, the Legislature enacted sections 1001.35 and 1001.36 to create a pretrial diversion program for defendants with certain mental health disorders. [Citation.] Pretrial diversion 'allows for the suspension of criminal proceedings and potential dismissal of charges upon successful completion of mental health treatment.' [Citation.] The statute expressly promotes '[i]ncreased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety.' [Citations.]" (*Vaughn v. Superior Court* (2024) 105 Cal.App.5th 124, 133.)

"As presently enacted, section 1001.36, subdivision (b) provides that a defendant is eligible for pretrial diversion if two criteria are met. First, the defendant has been diagnosed with a [specified] mental disorder . . . within the last five years by a qualified mental health expert. [Citation.] Second, the 'defendant's mental disorder was a significant factor in the commission of the charged offense.' [Citation.] 'If the defendant has been diagnosed with a mental disorder, the court shall find that the defendant's

5

mental disorder was a significant factor in the commission of the offense unless there is clear and convincing evidence that it was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense.' [Citation.]" (*People v. Graham* (2024) 102 Cal.App.5th 787, 795 (*Graham*).) "If a defendant meets these eligibility requirements, the court also must find that the defendant is suitable for pretrial diversion based on satisfaction of the following criteria: '(1) In the opinion of a qualified mental health expert, the defendant's symptoms of the mental disorder causing, contributing to, or motivating the criminal behavior would respond to mental health treatment. [¶] (2) The defendant consents to diversion and waives the defendant's right to a speedy trial . . . . [¶] (3) The defendant agrees to comply with treatment as a condition of diversion . . . . [¶] [and] (4) The defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community.' [Citation.]" (*Ibid.*) "Under section 1170.18, an ' "unreasonable risk of danger to public safety" ' is 'an unreasonable risk that the petitioner will commit a new violent [super strike].' [Citation.] Thus, a defendant is not suitable for diversion if the defendant is 'too dangerous to be treated in the community because he [or she] would commit a new violent super strike.' [Citation.] When determining whether the defendant will pose an unreasonable risk of danger to public safety, '[t]he court may consider the opinions of the district attorney, the defense, or a qualified mental health expert, and may consider the defendant's treatment plan, the defendant's violence and criminal history, the current charged offense, and any other factors that the court deems appropriate.' [Citation.]" (*Id.* at pp. 798–799.)

"We review a trial court's ruling on a petition for pretrial mental health diversion for abuse of discretion. [Citations.] 'A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence [citation].' [Citation.]" (*Graham, supra,* 102 Cal.App.5th at p. 795.)

6

Defendant argues that substantial evidence does not support the trial court's finding that he posed an unreasonable risk of danger to public safety as defined in section 1170.18. He cites his lack of prior felony convictions, his rehabilitative efforts in jail, and the decision by a different judge to sentence him to probation to argue that the trial court's ruling represented an abuse of discretion. The Attorney General argues that the trial court's ruling was not arbitrary, capricious, or patently unreasonable, asserting: "[Defendant] had a history of domestic violence against [R.P.], and he violated protective orders both before and after he attacked her with a knife. [Defendant] demonstrated his capacity to commit a super strike offense when he pressed a knife into [R.P.'s] neck and then slit her ear open, causing blood to pour down her chest, while he screamed, 'I just want to kill you.' [Citation.] The injury [defendant] inflicted on [R.P.] required stitches and left a scar. [Citation.] After his unprovoked attack, [defendant] repeatedly violated a criminal protective order by contacting [R.P.] while he was incarcerated. [Citation.] The superior court did not act irrationally by concluding that the serious and violent nature of [defendant's] crimes and his behavior before, during, and after he committed those crimes showed that he was likely to commit a super strike, making him unsuitable for mental health diversion."

We conclude that the trial court did not abuse its discretion in denying defendant's application for mental health diversion because substantial evidence supports the trial court's finding that defendant posed an unreasonable risk of danger to public safety. The trial court appropriately considered defendant's " 'violence and criminal history' " and " 'the current charged offense[s]' " among other factors in concluding that defendant posed an unreasonable risk of danger to public safety. (*Graham*, *supra*, 102 Cal.App.5th at p. 799.) The violent nature of the charged offenses supports a conclusion that defendant posed an unreasonable risk of danger to public safety as defined by section 1170.18. Defendant entered R.P.'s residence, confronted her about a man who was in the residence, and then smashed her cell phone and punched her television. After

7

having time to reflect, defendant escalated his conduct later that same day by confronting R.P. at a park, stating his desire to kill her, holding a knife to her neck, and slicing her ear. R.P. obtained a protective order due to defendant's actions, and defendant repeatedly violated the protective order by calling R.P. from jail. In addition, R.P. testified at the preliminary hearing that defendant had earlier violated a recently served protective order in May 2022 by entering her residence. Defendant had no record of prior violent felonies before the charged offenses, though he had numerous prior misdemeanor convictions. Defendant's actions provided substantial evidence to support the trial court's conclusion that defendant posed an unreasonable risk of danger to public safety.

Defendant asserts that denying mental health diversion represented an abuse of discretion because it was inconsistent with the later decision by a different judge to place him on probation. We see no necessary contradiction in the decisions by two different judges three and a half months apart to deny mental health diversion and to place defendant on probation. In *People v. Frahs* (2020) 9 Cal.5th 618 (*Frahs*), the People argued that ineligibility for probation disqualifies a defendant from mental health diversion because " 'diversion is similar in many respects to probation.' " (*Id.* at p. 639.) The California Supreme Court rejected this argument, concluding that "the Legislature left it to trial courts to make fact-specific evaluations of risk under" section 1001.36 and "a defendant may be ineligible for probation for numerous reasons other than being found to be an unreasonable risk of danger to public safety. [Citation.]" (*Frahs*, *supra*, at p. 639.) Denying mental health diversion while later imposing a sentence of probation are not necessarily contradictory actions. (See *People v. Pacheco* (2022) 75 Cal.App.5th 207, 214 [affirming trial court's denial of diversion because "[m]ental health diversion may provide some motivation for remaining drug free and compliant with treatment for mental illness" but felony probation and the threat of prison "will provide even more motivation"].) The sentencing court's comments that probation represented a "harder" sentence than confinement because "[p]robation will be able to supervise you more, will

8

be able to give you the tools to continue to be successful" demonstrate that the sentencing court was concerned with maintaining supervision of defendant and that it selected a sentence that allowed such supervision. This action is not inconsistent with denying diversion to defendant. Even assuming an inconsistency existed between one judge's denial of diversion and another judge's imposition of probation, an abuse of discretion is not demonstrated merely because judges reach different conclusions as to the proper disposition. (See *People v. Carmony* (2004) 33 Cal.4th 367, 377 ["a ' "decision will not be reversed merely because reasonable people might disagree" ' "].) Thus, defendant has not demonstrated that the trial court abused its discretion in denying his application for mental health diversion simply because defendant was later sentenced to probation.

Defendant relies on *People v. Moine* (2021) 62 Cal.App.5th 440 (*Moine*) to support his argument that the trial court abused its discretion in denying diversion. In *Moine*, the Court of Appeal held that the trial court abused its discretion in denying the defendant's mental health diversion application. (*Id.* at p. 451.) Moine was alleged to have committed acts of violence and threats of violence, and the Court of Appeal stated: "There is nothing in the record to indicate the prosecution presented evidence to suggest Moine was likely to commit such an offense in the future, and the circumstances of the pending charges did not support such an inference. To the contrary, two psychiatrists determined that he posed a low risk for future assault." (*Id.* at pp. 450–451.) The Court of Appeal also stated: "Our conclusion is further supported by the trial court's decision to release Moine into the community on bond for a period of over two years, which indicates the court necessarily found that Moine was not likely to cause 'great bodily harm to others' if released. [Citation.] It is logically inconsistent to deny mental health diversion on the ground that Moine was likely to commit a super strike offense, while simultaneously finding he was not likely to inflict great bodily injury on persons in the community." (*Id.* at p. 451.)

9

The instant case is distinguishable from *Moine*. The defendant in *Moine* was released on bond for more than two years, a decision that the reviewing court stated was at odds with the trial court's decision to deny diversion. Here, the trial court denied bail to defendant and then denied defendant's motion to set bail or grant supervised release, finding that denying the motion was necessary to ensure public safety. Defendant remained in custody from his arrest on August 15, 2022 until the trial court's denial of his mental health diversion application exactly one year later. Thus, there was nothing "logically inconsistent" in the instant case with the trial court's decisions regarding bail and mental health diversion as was the case in *Moine*. (*Moine*, *supra*, 62 Cal.App.5th at p. 451.) *Moine* also involved different charged offenses than the instant case. Moine was charged with three counts of assault and two counts of making criminal threats for two separate incidents that both took place in the offices of medical care providers. (*Id.* at p. 444.) The first instance occurred when Moine was involved in a confrontation with a fellow patient in which both landed blows upon the other and testimony conflicted as to who initiated the confrontation and who was more aggressive. (*Ibid.*) The second instance occurred nearly a year later when Moine became upset that a referral to a psychiatrist had not been approved, and he allegedly said "something 'along the lines of, "This is America. I can go home and get my gun and come back and shoot all of you," ' " along with certain other unspecified statements. (*Id.* at pp. 444–445.) However, other testimony offered disparate accounts of what Moine said during this second incident. (*Id.* at p. 445.) Here, the evidence before the trial court demonstrated that defendant not only made a threat but he used a knife to inflict injury upon R.P. in addition to causing damage to her property, and there was no conflicting evidence before the trial court as to who initiated the confrontation or who was more aggressive. Defendant here also repeatedly violated a protective order by contacting R.P. from jail after he was arrested. The Court of Appeal in *Moine* also cited testimony by two psychiatrists that Moine posed a low risk for future assault, while defendant in the instant

10

case attached a letter from a social worker that outlined defendant's mental health history and opined that he was "an appropriate candidate for Mental Health Diversion" but that offered no specific opinion as to the risk of danger to public safety that defendant posed if treated in the community. Based on these distinctions, *Moine* does not support defendant's argument that the trial court in the instant case abused its discretion by denying diversion.

Defendant cites *People v. Whitmill* (2022) 86 Cal.App.5th 1138 (*Whitmill*) and *People v. Williams* (2021) 63 Cal.App.5th 990 (*Williams*) to support his argument that the trial court abused its discretion in denying diversion, but both cases are distinguishable. In *Whitmill*, the defendant "negligently fired a single shot in the air away from those nearby and then threw the gun away and turned himself in to [law enforcement] with 'no incident.' " (*Whitmill*, *supra*, at p. 1155.) The Court of Appeal stated that by "running away from further confrontation, throwing away his firearm, and peacefully complying with law enforcement's request that he come forward and (presumably) be arrested," the defendant presented an "unusual scenario" that represented "a far cry from indicating that appellant is likely to commit a super-strike offense in the future." (*Id.* at p. 1151.) The Court of Appeal in *Whitmill* also cited expert opinion that the defendant would not pose an unreasonable risk of danger to public safety if treated in the community and if he abstained from substance abuse, and evidence that Whitmill attributed his substance abuse relapse before the charged offense to news about a family member's cancer diagnosis. (*Id.* at pp. 1151–1152.) The trial court in *Whitmill* also stated that " '[w]hat I have here is a defendant who had three years in the county jail suspended,' " with no other information in the opinion about Whitmill's custody status leading up to the trial court's ruling. (*Id.* at p. 1155.) Here, defendant's offenses were more severe and indicative of his risk of danger to public safety, no mitigating circumstances explaining defendant's behavior similar to those in *Whitmill* are apparent from the record, defendant remained in custody leading up to the denial of his diversion

11

application, and no mental health professional opined about defendant's lack of risk of danger to public safety similar to that in *Whitmill*. Meanwhile, in *Williams*, in response to his encounter with the owners of an automotive body shop, Williams "retaliated anonymously against the business's owners, a married couple . . . , with an unrelenting campaign of extremely vicious and threatening harassment carried out by e-mail and other means that continued daily for two years, until his identity was discovered and he was arrested." (*Williams*, *supra*, at p. 993, fn. omitted.) The reviewing court relied on *Moine* to conclude that the trial court abused its discretion in denying Williams' diversion application based on factors such as the "uncontroverted opinion of two mental health professionals" that Williams posed a low risk of danger to public safety, that Williams "was released on bond for more than two years without incident," that "Williams has *no* prior criminal record," and that "for all of his horrific threats, he never actually assaulted anyone or engaged in any violence." (*Williams*, *supra*, at p. 1003, fn. omitted.) Here, defendant provided no uncontroverted mental health professional's opinion that he posed a low risk of danger to public safety, he was not released on bond leading up to the ruling on the mental health diversion application, he had some prior criminal record, and he did in fact assault someone and engaged in violence. Defendant also repeatedly violated a protective order by contacting R.P. from jail after he was arrested. Neither *Whitmill* nor *Williams* supports defendant's argument that the trial court abused its discretion in denying the mental health diversion application in the instant case.

Based on defendant's current offenses and the totality of the record, the trial court could reasonably find that defendant posed an unreasonable risk of danger to public safety as defined in section 1170.18 if treated in the community. (§ 1001.36, subd. (c)(4).) The trial court did not make " 'an arbitrary or capricious decision by applying the wrong legal standard [citations], or base[] its decision on express or implied factual findings that are not supported by substantial evidence [citation].' [Citation.]"

(*Graham*, *supra*, 102 Cal.App.5th at p. 795.)  Thus, the trial court did not abuse its discretion in denying defendant's application for mental health diversion.

## IV.    DISPOSITION

The judgment is affirmed.

_____

BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____

DANNER, J.

_____

LIE, J.

*People v. Cato*
**H051711**